## NOLTE & AL vs. THEIR CREDITORS.

APPEAL from the court of the first district.

MARTIN, J. delivered the opinion of the court. From the decree of homologation of the tableau of distribution, several creditors have appealed.

Material men & workmen, employed by the undertaker of a building, have no privilege of their own ; but may avail themselves of it.
This claim is not postponed to the reimbursement of advances not stipulated for.
Neither of them acquires a preference over the other by a seizure.

The first is, Miller. The district judge was of opinion he had waived his privilege, and disallowed it: he claims as a material-man, and as having paid workmen $4696 21.

1st. The first objection to his demand, is, the waiver of his privilege. The evidence of this waiver results from a writing of the 9th of February, 1826, by which Miller acknowledged

that the lien he obtained by the assignment of Reynolds, the undertaker of the defendant's building, applied only to a sum of $1535 14, to be paid, in the last instance, after all the other claims have been satisfied, and that the insolvents were entitled to a priority of record for $6000.

Eastern Dist.
June 1827.

NOLTE & AL.
vs.
THEIR CREDI-
TORS.

If the sum of $1535 was not to be paid until all other claims are satisfied, all these claims are privileged against it, and it has no privilege; the district court, therefore, correctly decided the privilege was waived.

As to the other items of this creditor's claim, which are all subsequent to this writing, the waiver cannot extend.

2d. It is next objected, that material men and workmen, claiming a privilege for more than $500, must record their titles. *Civil Code* 274. We think the code here requires the record of the contract, on which the *undertaker's* claim arises; *art.* 2743. 'Tis he alone has a privilege; the material men and workmen whom he has employed, have no privilege of their own in the building; they are only permitted to avail themselves, *pro tanto*, of his privilege.

3d. It is further objected, that the underta-

Eastern Dist.
*June.* 1827.

NOLTE & AL.
*vs*
THEIR CREDI-
TORS.

kers have not completed the building; and the last payment of both contracts were not demandable till the building was completed.— Experts have viewed the building to ascertain the facts, and are of opinion, that what remains still to be done, is of the value of $915. The contract was for above $38,000; and it is not alleged that any damage has occurred. The deficiency, not exceeding 2 1-2 per cent. is so minute a matter, that all the syndics are entitled to is the retention of the sum. *Art.* 1920.

4th. The syndics urged that they were compelled, in order to have the building finished, to make greater advances than were at first contemplated; the undertaker not being able to go on without them; and that, therefore, these advances beyond what was stipulated for, are no infraction of the rights of material men and workmen, to be paid out of the deferred instalment; because without this the undertaker could not have proceeded, and the last instalment would never have become due.

The record shews no proof of this necessity; it is merely alleged. The law, however, has secured to material men and workmen a right to a fund formed by the contract; and this right cannot be affected by any act of both parties, or either of them.

5th. It is further objected, that at the foot of the supplemental contract, the undertaker ac-

knowledged the receipt of 20,566 dollars *on this contract, and that of the 6th of August,* which is all that by *both* contracts, was payable before the completion of the building; and the last or supplemental contract speaks of payment *to be* made before the completion of the work; that, therefore, the parties must have understood that more had been paid on the original contract than had been stipulated for: this conclusion being necessary to give some effect to the clause which relates to payments *to be made* on the second; and that Miller, who intervened in the second contract, as the undertaker's surety, cannot hold that the sum thus acknowledged to have been received left nothing to be paid before the completion of the building.

While the parties admit that the money acknowledged to have been received, was paid on *both* contracts, we cannot conclude that nothing was paid on one of them, and when we seek to find how much was paid on either, we have no clue to direct; and if the sum cover all that was to be paid on both, we must conclude the acknowledged payment was so made.

It is true, this leaves the clause in the last contract relating to payments *to be made* thereafter, before the completion of the building, inoperative. But to give it effect we cannot disregard the positive assertion of the parties of past facts, and without any legitimate rule ascertain what was paid on either contract, and come to the conclusion that more was paid than ought to have been.

6th. The syndics urge that the obligation of their insolvents to pay more than they engaged to pay, because they made some payments too soon, is in the nature of a penal obligation which does not bind syndics.

A creditor, whose debt has been incautiously paid to a person, not authorised to receive it, may still demand it from his debtor: and we cannot see how, in case of insolvency, the debt could not be demanded from the syndics, the illegal payment could not avail the debtor, and it cannot his syndics.

7th. Milier claims a privilege above all the creditors because he *first* seized. The subrogation of the material men and workmen, to the claim of the undertaker, exists before the seizure; from the code speaking of the subrogation after having spoken of the seizure, we

cannot mistake the *cause* for the *effect*; the
subrogation gives the right to and is the cause
of the seizure.  All material men and work-
men are subrogated, and neither can by a pre-
vious seizure destroy the rights of the other.

   Parker is another appellant.  His claim is
supported by a judgment against the undertak-
er and the syndics, and corroborated by evi-
dence below.   He furnished materials and has
a privilege himself.

   Cotton's heirs are appellants also—they
were refused a privilege, which was claimed on
the ground that the payment of a sum of mon-
ey of theirs, in the hands of the insolvents, who
had collected it for them, was enjoined; that
thus the insolvent became judiciary sequestra-
tors or depositaries, and that against such the
law gives a privilege.  *C. Code*, 546, *art.* 26.

   It would require much consideration to in-
duce us to say that the service of an injunc-
tion, so locks the property of the party, as to
prevent the free alienation of it.   Garnishees
are in the same situation; but we think the
case demands no opinion on this head.

   On the dissolution of the injunction, the in-
solvents were as completely in the possession
of the money, as agents of the heirs, as if the

Eas'ern Dis't.
*June*, 1827,

NOLTE & AL.
*vs.*
THEIR CREDI-
TORS.

former had not been enjoined from paying it to the latter. There was no necessity, indeed no utility in an actual delivery over of the money from the insolvents, in the capacity of the party sued with the injunction, to the same persons, as that of agents or the heirs. If the latter suffered their money to sleep in the insolvent's hands, they did so at their peril.

The dissolution of the injunction, left it, to every possible intent and purpose, as it was at the service of the injunction.

These appellants cannot therefore complain of the decision of the judge *a quo*.

We are also to examine such claims against the insolvents as are contested by the appellants, but previously we must enquire into that of one of the creditors, Lerond, who has made himself an appellee, and prayed that the deed may be amended in his favor, viz: Lerond.

His claim is founded on a judgment and proof of his work on the building, he is therefore entitled to a privilege.

Wither's claim is opposed by the appellants. It rests on a notarial act, by which the undertaker transferred him a claim against the insolvents to secure payment for timber furnished for their building. The objection is,

Eastern Dis't.
June 1827.

NOLTE & AL.
vs.
THEIR CREDI-
TORS.

that the assignment makes no proof against the creditors; but evidence of the supply has been introduced. Febrero says, that when the writing, subscribed by the insolvents, is strengthened by *adminiculos*, or proof, destroying the presumption of fraud, it is evidence. *Part. 2, 6, 3, ch. 2 s. n.* 12 *Martin*, 165.

It is objected the assignment was made *en tiempo inhabil* and could not give a preference. The privilege of preference does not arise from the assignment, but from the creation of the debt which the assignment was intended to secure.

Tattel's claim is also objected to, and a priority claimed over him because he made no seizure as others did. This point has been disposed of in examining Miller's pretentions.

Duralde's claim is opposed but no evidence is adduced against it., and it was fully made out by proof.

Beckman's claim, which is also objected to, arises from his endorsement and the subsequent payment of a note of the undertaker's to Barron & Co. in payment of slates employed in the building; as a surety for the undertaker, he was bound to pay the amount of the note, and doing so, paid for the slates. Baron

& Co. were privileged creditors, being mate-
rial men.

It is objected they had no privilege, as they
took the note *in payment*, and their claim for
the slates was novated. Of this we see no
evidence, and we are not allowed to presume
it. *C. Code*, **2196**.

The claim of the Parfaite Union Lodge,
does not appear to have been opposed and is
on the tableau.

The claims of Gurley and Guillott, and Per-
rault and Pascal, cannot be distinguished from
other material men or workmen, and must be
paid in concurrence with these.

So must the claim of Beckman, unless proof
should shew it to be for the completion of work
left unfinished by the undertaker.

The judge below erred in recognising any
preference under the undertaker's assignment.
He had been paid every thing he could claim
before the completion of the building, and
therefore could give no preference, the law ha-
ving forbidden anticipated payments.

It is therefore ordered, adjudged and de-
creed, that the judgment of the district court be
annulled, avoided and reversed, with directions

to modify the tableau according to the princi-
ples herein established.

———— for the plaintiffs, ———— for the defendants.